IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BILL E. KINNEY,<br><br>        Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | CV14-282-M-DLC-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Bill Kinney brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

## I.  Procedural Background

Kinney first applied for disability insurance benefits in August 2004, alleging disability since January 1, 1999. Kinney's claim was denied initially on October 1, 2004, and he did not request reconsideration within the 60-day time limit.  (Tr. 32).

Kinney filed a second application for disability insurance benefits in May

25, 2006, alleging the same January 1, 1999, onset date and claiming disability due to asbestosis, sleep apnea, post traumatic stress disorder ("PTSD") and hearing loss in both ears. (Tr. 334). Kinney's claim was denied initially and on reconsideration, and by an ALJ following an administrative hearing. (Tr. 19-28). The Appeals Council granted Kinney's subsequent request for review because an audit of the hearing recording showed that the ALJ had engaged in an off-the-record discussion with the medical expert. (Tr. 86).

Another administrative hearing was held on August 18, 2009, and after several delays a supplemental hearing was held on March 8, 2011. (Tr. 662-828, 862-999). On May 18, 2011, an ALJ issued a unfavorable decision finding that Kinney was not disabled on or before June 30, 2001, the date he was last insured for disability purposes. (Tr. 32-46). The Appeals Council initially granted Kinney's request for review because the file could not be located. (Tr. 60-62). When the missing file was later reconstructed, the Appeals Council vacated its prior order and allowed Kinney to submit additional evidence and argument. The Appeals Council ultimately denied Kinney's request for review, making the ALJ's May 18, 2011, decision final for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Kinney was 54 years old at the time of his alleged onset date, and 66 years

old at the time of the ALJ's decision.

I. **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

The ALJ found at step one that Kinney met the insured status requirements of the Act through June 30, 2001, and had not engaged in substantial gainful activity since from his January 1, 1999, alleged onset date through his date last insured of June 30, 2001. (Tr. 34). At step two, the ALJ found that on or before June 30, 2001, Kinney had the following severe impairments: scarring on his lungs with normal pulmonary function testing; a bilateral hearing loss compensated with hearing aids; Adie's syndrome/tonic pupil; obesity; and gout. (Tr. 35). The ALJ also found that Kinney had PTSD and a history of alcohol and marijuana abuse or dependence, but determined that these impairments did not significantly affect Kinney's ability to work before June 30, 2001. (Tr. 35).

The ALJ concluded at step three that Kinney did not have an impairment or

combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 38). The ALJ also found that Kinney's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his testimony concerning the intensity, persistence, and limiting effects of his symptoms and functional limitations on or before June 30, 2001, were not entirely credible. (Tr. 41).

The ALJ concluded that Kinney had the residual functional capacity on or before June 30, 2001, to perform skilled and semi-skilled work not requiring concentrated exposure to dust, fumes, gases, or other pulmonary irritants. (Tr. 40). The ALJ further concluded that Kinney had no exertional limitations on or before June 30, 2001. (Tr. 40). Based on that residual functional capacity assessment, the ALJ found at step four that Kinney could perform his past relevant work as the owner/operator of an automobile wholesale business and used car salesman. (Tr. 45).

### A.  Severe Impairments

Kinney argues the ALJ erred by finding that he did not have severe PTSD prior to the expiration of his insured status on June 30, 2001.

An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment may be

considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

The ALJ accepted that Kinney had PTSD, but found the impairment was not severe because it did not significantly affect Kinney's ability to work before June 30, 2001. (Tr. 35). To begin with, the ALJ pointed out that there was no medical evidence in the record indicating that Kinney had sought treatment for PTSD or anxiety symptoms before June 2001. (Tr. 37). The ALJ noted that Kinney first complained of severe PTSD-related symptoms in May 2004, and began treatment with Veterans Administration psychiatrist Dr. Nancy Errebo in August 2004. (Tr. 37, 426, 521). The fact that there were no medical records establishing that Kinney had been treated for PTSD prior to June 2001 supports the ALJ's determination that the impairment was not severe.

The ALJ also relied on the testimony of the psychological expert, Dr. Donna Veraldi. (Tr. 37). Dr. Veraldi testified that PTSD symptoms "come and go," with periods of remission and periods when the symptoms may get worse. (Tr. 893).

Dr. Veraldi indicated that there was not enough evidence in the record for her to relate Kinney's PTSD to the period before June 2001. (Tr. 893, 929-30).

Kinney maintains the ALJ relied too heavily on the absence of substantiating medical records and claims he overlooked other evidence establishing that he had suffered from severe PTSD for several years prior to June 2001. In particular, Kinney maintains that his own testimony and that of his wife clearly establish that he has suffered from severe PTSD at least since the early 1990s. As discussed below, however, the ALJ provided clear and convincing reasons for finding Kinney's testimony less than entirely credible, and germane reasons for discrediting his wife's testimony.

Kinney also argues the ALJ erred by not giving more weight to a September 15, 2006, letter by Dr. Errebo in which she wrote the following: "Although I have known [Kinney] for just two years, I feel sure that symptoms have been present since the Vietnam War and have been progressing as he ages." (Tr. 521). The ALJ specifically considered Dr. Errebo's letter later in the sequential evaluation process. (Tr. 39). The ALJ pointed out that according to Dr. Errebo, Kinney's PTSD was progressive. The ALJ did not disagree. He simply found that while Kinney's symptoms may gotten progressively worse, there was no evidence in the record to establish that Kinney's symptoms were so severe as to significantly limit

or preclude him from working prior to June 2001.

To the extent Kinney contends the ALJ violated SSR 83-20, he is mistaken. SSR 83-20 provides that in a case where an onset date must be inferred, the ALJ should call a medical expert. SSR 83-20, 1983 WL 31249 *3 (S.S.A.). That is precisely what the ALJ did here, calling on Dr. Veraldi to testify as to whether or not it was possible to infer that Kinney suffered from severe PTSD prior to June 2001. Dr. Veraldi testified that she could not relate Kinney's PTSD back to that time period. While SSR 83-2 also provides that additional information about the progression of an impairment may be obtained from family members, the ALJ permissibly discounted the testimony of Kinney's wife as discussed below.

Substantial evidence supports the ALJ's finding at step two that Kinney's PTSD was not a severe impairment prior to June 2001.

### B. Medical Opinions

Kinney maintains the ALJ also erred by not giving more weight to Dr. Errebo's opinion as set forth on two mental functional capacity evaluation forms dated September 17, 2006.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The

weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). The Commissioner may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

Dr. Errebo indicated that Kinney's PTSD caused marked limitations in Kinney's ability to relate to an interact with supervisors and coworkers, deal with the public, maintain attention and concentration, and withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity. (Tr. 522-530). Dr. Errebo also indicated that Kinney had poor to no ability to maintain attention for a two-hour segment, work in coordination with or proximity to others without being unduly distracted, complete a day or work week without interruptions from psychologically-based symptoms, or perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 522-30).

The ALJ recognized that if Kinney was as limited as Dr. Errebo indicated,

he would likely be precluded from performing any sustained work activity. (Tr. 44). The ALJ considered Dr. Errebo's opinion regarding Kinney's limitations, but ultimately gave it little weight for a number of reasons.[1] To begin with, the ALJ found that because Dr. Errebo did not begin treating Kinney until August 2004, she was not familiar with his condition during the relevant period prior to June 2001. (Tr. 39, 44). The ALJ permissibly found that Dr. Errebo's opinion as to the extent of Kinney's mental limitations was entitled to little weight because it was rendered three years after the expiration of Kinney's insured status. *See, e.g., Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (ALJ permissibly discounted the opinion of a psychiatrist who examined the claimant well after the expiration of his disability insured status).

The ALJ also determined that Dr. Errebo's opinion was inconsistent with medical and other evidence in the record. (Tr. 44). For example, the ALJ discussed the opinion of psychologist Dr. Patterson, who examined Kinney in June 2007. (Tr. 624-28). Dr. Patterson confirmed that Kinney had moderate chronic PTSD, but indicated that most of Kinney's symptoms were mild to moderate. (Tr.

---

[1] Because Dr. Errebo's opinion was contradicted by Dr. Veraldi and examining psychologist Dr. Earl Patterson (Tr. 624-28), the ALJ could reject it for specific and legitimate reasons.

627). Dr. Patterson found that Kinney would have an "occasional decrease in work efficiency due to signs and symptoms of PTSD but generally his functioning is satisfactory." (Tr. 628). The ALJ found it significant that even six years after Kinney's date last insured, Dr. Patterson was of the opinion that Kinney's PTSD had resulted in only mild to moderate symptoms and an occasional decrease in work efficiency. (Tr. 39, 44). The ALJ permissibly discounted Dr. Errebo's opinion in part because it was not consistent with other evidence in the record, including Dr. Patterson's report. These were sufficiently specific and legitimate reasons for discounting Dr. Errebo's opinion.

### C. Credibility

Kinney contends the ALJ did not provide clear and convincing reasons for finding his testimony only partially credible.

If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations

omitted). Kinney met his initial burden because he provided evidence that he has underlying impairments that could reasonably be expected to produce some degree of symptoms, and the ALJ did not find that he was malingering.

Kinney alleges disability primarily due to PTSD. Because there are no medical records establishing that Kinney was treated for PTSD prior to June 2001, Kinney's credibility is of particular significance for purposes of establishing that he was disabled during the relevant period. Kinney testified that he had significant functional limitations due to his PTSD long before his insured status expired in June 2001. Kinney testified that he has suffered from PTSD since his military service in Vietnam, and described having flashbacks and emotional problems following his discharge in 1969. (Tr. 674). Kinney explained that after the Gulf War started in the early 1990s he began having problems leaving the house due to his PTSD, and said he began drinking and became suicidal. (Tr. 690, 714). He described having difficulty sleeping since his time in Vietnam, and testified that he slept an average of four to five hours a night, would wake up in cold sweats and screaming due to flashbacks. (Tr. 720-23).

The ALJ considered Kinney's testimony, but questioned his credibility as to the debilitating severity of his PTSD based in part on the fact that he had been

working the automobile wholesale business for about 40 years after serving in the military. (Tr. 35, 41-42). The ALJ specifically noted that even after his alleged onset date in January 1999, Kinney continued working on a part-time basis, selling at least 16-40 cars each year. (Tr. 42, 164-300). The ALJ further noted that in 2009, eight years after the date last insured, Kinney was selling 50 to 60 cars per year, going to auctions, and buying from dealers. (Tr. 35, 587, 650). The ALJ reasonably found the fact that Kinney was capable of operating his automobile wholesale business for so many years undermined his testimony that he was so debilitated by his PTSD that he was often unable to leave the house.

The ALJ further found that certain inconsistencies in Kinney's reported activities undermined his credibility. Kinney indicated in 2004 that he was no longer able to go hunting or fishing. (Tr. 323). As the ALJ noted, however, there were several remarks in the record showing that Kinney went hunting after 2004. (Tr. 42, 453, 563). The ALJ permissibly questioned Kinney's credibility based on his inconsistent reporting. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

The ALJ next found that Kinney's allegations were not supported by any objective medical evidence from the relevant period. (Tr. 41). As discussed

above, there was no medical evidence in the record indicating that Kinney had sought treatment for PTSD or anxiety symptoms before June 2001. (Tr. 37). While it would not have been proper for the ALJ to reject Kinney's testimony based solely on the lack of objective medical evidence, it was one proper factor for the ALJ to consider. *Burch*, 400 F.3d at 681. The ALJ reasonably found the fact that there were no medical records establishing that Kinney had been treated for PTSD prior to June 2001 undermined Kinney's testimony that his PTSD had been of disabling severity since January 1999.

These were sufficiently clear and convincing reasons for discounting Kinney's testimony.

**D. Lay Testimony**

Kinney maintains the ALJ did not provide germane reasons for discounting the testimony of his wife, Garnet Kinney.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must

give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's]claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

For the most part, Garnet's testimony mirrored Kinney's own testimony. On some points, however, she testified to additional limitations caused by Kinney's PTSD. For example, Garnet testified that Kinney's PTSD caused him to become so agitated every day that he would end up screaming for hours at time, all day long. (Tr. 771-72). She testified that Kinney was typically only able to leave the house one or two days a week, and he spent his days doing nothing but staring at

the television. (Tr. 763-64).

The ALJ considered Garnet's testimony in conjunction with Kinney's testimony. (Tr. 41). To the extent he found her not credible, he did so for the same reasons, namely, that her testimony regarding the disabling severity of Kinney's PTSD was not consistent with the medical and other evidence of record. At the administrative hearing in August 2009, Garnet testified that Kinney's PTSD had been so severe since 2004 that he would scream for hours at a time nearly every day. (Tr. 771-73). When Dr. Patterson examined Kinney in June 2007, however, he found that Kinney had moderate chronic PTSD with only mild to moderate symptoms. (Tr. 624-28). The ALJ reasonably found that Garnet's testimony was not consistent with the medical evidence, including Dr. Patterson's opinion. The ALJ is was a sufficiently germane basis for finding Garnet less than entirely credible.

### E. Vocational Expert

Kinney argues the ALJ erred by not including limitations related to his gout, obesity, Adie syndrome, and audiological impairments in his hypothetical to the vocational expert. The ALJ discussed these impairments at length but found they were not severe because they did not have a significant effect on Kinney's ability to work. (Tr. 35-37). The ALJ's discussion was supported by substantial

evidence, and Kinney does not make any specific argument as to how the ALJ's analysis was flawed. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence).

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

DATED this 16th day of July, 2015

_____
Jeremiah C. Lynch
United States Magistrate Judge