

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| BILL E. KINNEY, | CV 14–282–M–DLC–JCL |
| Plaintiff, | |
| vs. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

United States Magistrate Judge Jeremiah C. Lynch entered his Findings and Recommendation on July 16, 2015, recommending that Kinney's motion for summary judgment be denied and the Social Security Commissioner's decision be affirmed. Kinney timely filed objections and is therefore entitled to *de novo* review of the findings and recommendation to which he objects. 28 U.S.C. § 636(b)(1). The portions of the Findings and Recommendation not specifically objected to will be reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Because the parties are familiar with the facts and procedural history of this case they will be included here only as necessary to explain the Court's order.

1

Kinney brings this action challenging the denial of his application for disability insurance benefits. Kinney alleges that he has been disabled since January 1, 1999 by post-traumatic stress disorder ("PTSD"), sleep apnea, hearing deficits, and asbestosis and related pulmonary problems. Kinney's last date insured was June 30, 2001. Kinney's claim was considered and reviewed several times between the time of his first filing with the Social Security Administration on August 20, 2004 and its final denial of his request for review. On September 9, 2014, the Administrative Law Judge's decision of May 18, 2011 became subject to judicial review.

Kinney raises the following objections: (1) the Administrative Law Judge ("ALJ") erred in finding that Plaintiff's PTSD was not a "severe" impairment; (2) the ALJ failed to provide specific, clear, and convincing reasons to reject Kinney's testimony; (3) the ALJ failed to provide germane reasons for rejecting the testimony of Kinney's wife; (4) the ALJ failed to provide a specific and legitimate reason to reject the opinions of Kinneys's treating psychiatrist, Dr. Nancy Errebo; and (5) the ALJ failed to include all limitations into his determination of Kinney's residual functional capacity ("RFC").

## A.    Severe Impairment under SSR 83-20

Kinney argues that the ALJ violated the directives of SSR 83-20 by not

classifying Kinney's PTSD as "severe" at the second step of the five-step disability evaluation process. The Commissioner responds that the ALJ properly followed the procedural requirements of SSR 83-20 by considering the entirety of the record along with medical expert testimony to determine the severity and onset of Kinney's disability.

The ALJ followed SSR 83-20 and applied the appropriate standard for severity. As Kinney points out, SSR 83-20 allows an ALJ to infer the onset of disability through the testimony of the claimant and other witnesses when medical evidence from the relevant time is unavailable. Nonetheless, "[t]he impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record." SSR 83-20, 1983 WL 31249 *3. Kinney's argument that the ALJ violated SSR 83-20 is unpersuasive for three reasons: (1) SSR 83-20 allows for a permissive inference of onset date that in no way mandated the ALJ to determine that Kinney's PTSD appeared prior to its first mention in the medical record; (2) the ALJ rejected lay testimony that was "contrary to the medical evidence"; and (3) the ALJ "call[ed] on the services of a medical advisor," Dr. Donna M. Veraldi, at the hearing to help guide his determination. *Id.*

The ALJ could have classified Kinney's PTSD as severe in 2001 only by

3

inference. The record contains no medical evidence of Kinney's PTSD prior to 2004. Kinney filed his initial application for social security benefits at that time, over three years after his last date insured, over five years after the alleged onset of his disability, and shortly after he was arrested for criminal possession and sale of dangerous drugs. (Tr. 37.) Medical records from 2005 and 2006 demonstrate that Kinney represented to doctors that his PTSD was well-treated with marijuana during that time. (Tr. 37.) None of the evidence in the record discussing Kinney's PTSD was created prior to or within three years of Kinney's last date insured. (Tr. 41.)

To assist in determining onset, the ALJ called upon a medical expert, Dr. Veraldi, who testified that she could not infer a 2001 onset date when medical records did not mention Kinney's PTSD or its symptoms until 2004. (Tr. 37.) At a supplemental hearing in 2011, Dr. Veraldi testified that Kinney was diagnosed with PTSD as early as 2004. Her review of the medical record and testimony from earlier hearings led her to conclude that Kinney had some symptoms in 2004 and that his symptoms worsened and increased from 2007 through 2009. (Tr. 869, 877–79.) Dr. Veraldi classified the likely impact of Kinney's PTSD on his ability to work as "mild" from 2004 to 2007. She could not make a determination of likely impact before 2004. (Tr. 37, 880–85.)

The ALJ also accorded "considerable weight" to disability determinations made by the Department of Veterans Affairs ("VA"). (Tr. 45.) The VA denied disability for PTSD to Kinney in 2004, granted 30% disability for PTSD in 2006, and granted 50% in 2007. The ALJ reasonably found that the VA determinations showed that Kinney's PTSD has progressively worsened since 2004, supporting his unwillingness to infer disability in 2001.

An assessment prepared by Kinney's treating psychiatrist, Dr. Nancy Errebo, presents the only evidence in the medical record to support Kinney's claim for disability prior to June 30, 2001. As discussed below, the ALJ did not err in according little weight to Dr. Errebo's assessment or in rejecting the testimony of Kinney and his wife, Garnet. The ALJ appropriately decided not to infer onset based on Dr. Veraldi's testimony and the objective medical evidence.

Additionally, the ALJ did not apply too high a standard for severity. Kinney points to *Webb v. Barnhart* to support his argument, asserting that the determination of severity at step two is merely "a de minimis screening device used to dispose of groundless claims." 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). *Webb* is immediately distinguishable, however, because the plaintiff there presented objective medical evidence to demonstrate that he was disabled on the date last insured. 433 F.3d at

684. Further, *Webb* interprets SSR 85-28, which does not require an ALJ to infer severity but rather clarifies how an ALJ must determine severity when medical evidence is presented. SSR 85-28, 1985 WL 56856. Here, there is no medical evidence to illuminate Kinney's condition in 2001. The ALJ was under no obligation to presume Kinney's impairment was severe simply because no medical evidence existed to definitively prove it was not. Further, any error would be harmless: the ALJ went on to determine that Kinney's PTSD did not meet the criteria for mental impairment described in the Listing of Impairments. (Tr. 38.)

## B. Rejection of Kinney's Testimony

Substantial evidence supports the ALJ's determination that Kinney was not credible. The ALJ provided "specific, clear, and convincing reasons for discrediting" Kinney's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Judge Lynch summarized those reasons as follows: (1) Kinney worked in the automobile wholesale business for 40 years after his service in the Vietnam War; (2) Kinney continued to work on a part-time basis in that business after Kinney's alleged onset date; (3) Kinney sold 50-60 cars yearly as late as 2008; (4) Kinney's credibility was undermined by his inconsistent reporting of his ability to hunt; and (5) no objective medical evidence from the relevant period supported Kinney's claims. (Doc. 12 at 13–15.)

6

Kinney argues that the ALJ's listed reasons are not sufficiently specific, clear, and convincing. Kinney asserts: (1) his ability to perform part-time work was improperly considered as evidence that he was able to perform full-time work; (2) his hunting activities should not have been considered when Kinney did not physically labor in hunting; and (3) the ALJ could not reject his subjective testimony simply because it was unsupported by the medical record.

The ALJ properly evaluated and analyzed Kinney's credibility based on his continued work activity. The ALJ did not consider Kinney's continued part-time performance of work as absolute proof that Kinney could perform full-time labor but as evidence undermining Kinney's credibility. The ALJ wrote:

> He indicated that he was having problems staying healthy enough to operate the business. He also stated he had last sold a couple of cars in January or February 2006, and he still had a couple of cars on his lot. However, the claimant's testimony and the tax returns he has submitted indicate that he is still actively operating the business on at least a part-time basis, and that he has been selling 16–40 cars a year since 1999.

(Tr. 42.)

Kinney is correct to point out that an individual could perform part-time work regularly and still meet the standard for disability, an inability to "perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) . . . ."

7

SSR 96-8p, 1996 WL 374184 *7. The ALJ did not use Kinney's part-time work to find that Kinney was not disabled, however. Because Kinney presented only subjective data to prove the onset date of his disability, the ALJ had to determine the reliability of Kinney's testimony, and evidence of his ongoing work was relevant to the extent it was inconsistent with other testimony. Not only did Kinney's continued work activity contradict prior assertions that he was no longer involved in selling used cars, but it also contradicted his testimony regarding the severity of his PTSD. (Tr. 41–42.)

Similarly, the ALJ considered Kinney's continued hunting activities not as proof that Kinney could perform full-time work but as an indication that Kinney was not reliable. Kinney represented that he was no longer able to hunt in 2004, but the medical record shows that he continued to hunt and in fact shot an elk several years after filing his claim. (Tr. 42.) Regardless of how physically involved Kinney was in hunting, Kinney exaggerated the impact of his PTSD in his earlier statements to the Social Security Administration. As with Kinney's work activities, such inconsistencies may permissibly be used to reject a plaintiff's testimony. *See Burch v. Barnhart*, 400 F.3d 676, 680–681 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in

8

claimant's testimony.")

The ALJ also discredited Kinney's testimony that his PTSD was a severe mental disability in 2001 because Kinney made inconsistent representations to medical providers and the Social Security Administration. In 2004, Kinney indicated on a form both "that his concentration, memory, and ability to complete tasks were affected by his condition" and that he "had no problems following written or spoken instructions." (Tr. 42.) In 2004 and again in 2005, Kinney reported that he had no difficulty interacting with others. (Tr. 39.) Kinney indicated in 2004 that he could perform all necessary self-care functions except for foot care. (Tr. 39.) Kinney reported to medical providers in 2005 and again in 2006 that his marijuana use sufficiently treated his PTSD. (Tr. 37.)

Finally, the ALJ properly considered the lack of objective medical evidence in his credibility determination. While Kinney's self-reported symptoms may not be discredited simply because they are unsupported by objective medical evidence, a lack of objective medical data "is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Here, the ALJ reasonably discredited Kinney's testimony because he did not seek medical treatment for his PTSD until he filed an application for disability benefits, shortly after his arrest for possession and sale of marijuana, and three and five years after his date last

insured and alleged onset of disability, respectively. (Tr. 37.) When considered alongside the inconsistencies discussed above, the lack of objective medical evidence of PTSD prior to 2004 was permissibly considered evidence of Kinney's credibility.

## C.    Rejection of Garnet Kinney's Testimony

The ALJ properly discredited Garnet Kinney's testimony by "expressly determin[ing] to disregard [her] testimony and giv[ing] reasons germane to [Garnet] for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ unequivocally disregard her testimony, writing: Garnet's testimony, "concerning the intensity, persistence and limiting effects of [Kinney's] symptoms and [his] functional limitations on or before June 30, 2001, [is] not credible to the extent [it is] inconsistent with the medical evidence in the record and the . . . residual functional capacity assessment." (Tr. 41.)

The ALJ gave reasons germane to Garnet by pointing to his reasons for rejecting Kinney's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ rejected both Kinney's and Garnet's testimony as inconsistent with the record. (Tr. 41.) To the extent Garnet's testimony differed from Kinney's, Garnet's testimony departed further from the medical evidence. Garnet testified that, because of Kinney's PTSD, he would scream for hours at a time,

10

"every single day." (Tr. 771–72.) Garnet also testified that Kinney was unable to leave the house for days at a time and that "he rarely slept . . . more than [an] hour or two a night." (Tr. 763–65). As is thoroughly discussed elsewhere in this Order, the medical evidence does not support a finding of severe PTSD during the relevant time period. Because it was inconsistent with medical evidence, the ALJ's rejection of Garnet's testimony was "supported by substantial evidence and was not error." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

## D. Rejection of Treating Physician Nancy Errebo's Testimony

The ALJ provided "specific and legitimate reasons" to discount Dr. Errebo's testimony. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ did not err in discrediting Dr. Errebo's medical opinions when they were unsupported by objective evidence, inconsistent with the medical record, and based on the self-reported symptoms of Kinney and his wife. *See Batson*, 359 F.3d at 1195.

The ALJ expressly determined that "Dr. Errebo's assessment of claimant's functional limitations, particularly as to his condition on or before June 30, 2001, when he was last insured for disability purposes, is inconsistent with the medical and other evidence in the record." (Tr. 44.) Dr. Errebo treated Kinney, but not until 2004, over three years after the date last insured, "and she was not familiar

11

with the claimant's condition 3 years earlier." (Tr. 44.) The ALJ permissibly

accorded less weight to Dr. Errebo's assessment when Dr. Errebo did not treat

Kinney until 2004. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (finding

the ALJ had appropriately discounted the opinion of a psychiatrist who examined

the claimant after expiration of disability insurance).

Dr. Errebo wrote a letter to Kinney's attorney in 2006, stating: "Although I

have known [Kinney] for just two years, I feel sure that his symptoms have been

present since the Vietnam War and have been progressing as he ages." (Tr. 44,

521.) Dr. Errebo described Kinney's PTSD as progressive, suggesting that his

PTSD in 2001 was less severe than when she first saw him in 2004. The ALJ's

determination that Kinney's PTSD was not severe in 2001 is consistent with Dr.

Errebo's classification of Kinney's PTSD as progressive. The ALJ did not,

however, find that the objective medical evidence supported Dr. Errebo's

assessment of severity.

The medical records authored by Dr. Errebo are based singularly upon

representations made to her by Kinney and Garnet. In a 2006 questionnaire, Dr.

Kinney describes the "*clinical findings* including results of mental status

examination which demonstrate the severity of [Kinney's] mental impairment and

symptoms" as having "been described by patient and his wife." (Tr. 523

12

(emphasis added).) Elsewhere in the same questionnaire, Dr. Errebo refers to a mental status evaluation, but no specific findings are documented, and no diagnostic tool is attached. (Tr. 525.)

Because Dr. Errebo did not treat Kinney until over three years had passed after his date last insured, and because Dr. Errebo's 2004 assessment of Kinney is inconsistent with other medical evidence, the ALJ reasonably discounted Dr. Errebo's assessment. Further, the ALJ did not discredit any objective clinical findings but only medical opinions based on Kinney's and Garnet's subjective statements. The ALJ set forth specific and legitimate reasons for rejecting Dr. Errebo's statements.

## E.    Residual Functional Capacity Determination

Kinney objects to the ALJ's determination of Kinney's residual functional capacity ("RFC"), asserting that the ALJ erred by not considering all exertional and non-exertional limitations in his RFC finding. More specifically, Kinney argues that the ALJ ought to have factored in Kinney's PTSD, hearing loss, Adie's syndrome,[1] gout, obesity, and respiratory problems. The ALJ determined that only

---

[1] "Holmes-Adie syndrome is a neurological disorder affecting the pupil of the eye and the autonomic nervous system, . . . thought to be the result of a neurotrophic viral infection that causes inflammation and damage to neurons in the . . . area of the brain that controls eye movements." This syndrome is not considered to be life-threatening or disabling. Nat'l Inst. of Health, *NINDS Holmes-Adie Syndrome Information Page*, NIH.gov,

Kinney's pulmonary scarring affected his ability to work and that, on his date last insured, Kinney had the ability "to perform skilled and semi-skilled work not requiring concentrated exposure to dust, fumes, gases, or other pulmonary irritants." (Tr. 40.)

Kinney asserts that the ALJ, "by specifying that only his mental impairments 'did not significantly affect' plaintiff's ability to work prior to June 30, 2001, . . . impliedly indicated that his pulmonary, hearing, Adies syndrome, gout and obesity were 'severe' impairments prior to the date last insured." (Doc. 13.) This argument is unconvincing. The ALJ provided adequate reasons to reject each independent impairment when determining Kinney's RFC. Kinney wears hearing aids, but the medical record did not indicate that his hearing impairment affected his ability to work. (Tr. 36.) Kinney had Adie's syndrome in 2001, but he had 20/20-1 corrected vision in both eyes when tested in 2007, and no evidence supported a finding that he was visually impaired such that he could not see well or function at work on his date last insured. (Tr. 36.) Kinney claimed he had sleep apnea by 2001, but the disorder was first referenced in the medical record in 2004. (Tr. 36). Kinney carried a diagnosis of gout prior to 2001, but the record

---

http://www.ninds.nih.gov/disorders/holmes_adie/holmes_adie.htm (last visited Nov. 2, 2015).

suggested his treatment was adequate; he reported in 2002 that he had been free of exacerbations and able to decrease his medication. (Tr. 37.) Kinney's obesity was not considered because the evidentiary record did not support a finding that his weight factored into his ability to work. (Tr. 36.) Kinney claimed various respiratory problems, including asbestosis, but diagnostic testing before and after 2001 demonstrated that Kinney's pulmonary function was normal, despite some scarring in his lungs. (Tr. 36.) The ALJ reasonably determined that the only physical impairment factoring into Kinney's RFC was his pulmonary scarring.

Nor did the ALJ err by refusing to factor Kinney's mental impairments into his RFC. As discussed above, the ALJ appropriately determined that Kinney's mental impairments were mild and did not affect his ability to perform work. Kinney argues that the ALJ failed to follow the regulations and Ninth Circuit precedent by refusing to consider all functional limitations supported by the record. Kinney, however, points only to subjective evidence–his testimony, his wife's testimony, and Dr. Errebo's assessment based on the Kinneys' statements to her–to contradict the ALJ's RFC determination. As fully discussed above, the ALJ did not err in discrediting these sources, and he communicated sufficient reasons to do so. The ALJ's decision is supported by substantial evidence and free from harmful legal error.

There being no clear error in Judge Lynch's remaining Findings and
Recommendation,

IT IS ORDERED that Judge Lynch's Findings and Recommendation (Doc.
12) are ADOPTED IN FULL.  The Commissioner's decision is AFFIRMED.


Dated this 2nd day of November, 2015.


Dana L. Christensen, Chief District Judge
United States District Court